STATE OF NORTH CAROLINA v. ROBERT BOONE

No. 6921SC231

(Filed 18 June 1969)

**Criminal Law § 168— instructions — statement of facts not in evidence — prejudicial error**

In this prosecution for assault with intent to commit rape, the trial court committed prejudicial error in inadvertently stating facts in the charge which were not in evidence and which related to a critical area of the case, notwithstanding defendant failed to call the error to the attention of the trial court in time for correction.

APPEAL by defendant from *Bailey, J.,* 9 December 1968 Criminal Session, Superior Court of FORSYTH.

Defendant was charged in a valid bill of indictment with assault with intent to commit rape. He was tried on a plea of not guilty and found by the jury to be guilty as charged. From a judgment of 15 years imprisonment, defendant appealed.

Since recapitulation of all the evidence would serve no useful purpose, only those facts necessary for decision are stated in the opinion.

*Attorney General Robert Morgan by Assistant Attorney General Parks H. Icenhour, Real Property Attorney Rafford E. Jones, and Real Property Attorney Roy A. Giles, Jr., for the State.*

*White, Crumpler and Pfefferkorn by William G. Pfefferkorn and Fred G. Crumpler, Jr., for defendant appellant.*

MORRIS, J.

Appellant brings forward five assignments of error, three of which are to the charge to the jury. One is to the court's limiting defendant's cross-examination of a witness for the State. The other is to statements made by the court to the jury after they had deliberated for some time and had failed to reach a verdict.

Defendant was charged with assault with intent to commit rape. The prosecuting witness was his 15-year-old stepdaughter. She had testified that she lived with her mother and stepfather, that her mother and stepfather had been married for about 3 years, that she had during that time on occasions found it necessary to leave the home and stay with relatives or friends for periods of time because of her stepfather's attempts to molest her, that she had told her mother about previous occasions but nothing had been done about it. She testified that on this occasion she was at home sick, that her stepfather took her mother to the beauty parlor, that she was asleep and awoke to find that he was on her bed on his knees pulling off her pajama bottoms, that he had his pants off and did not have on any underpants. She then described graphically his actions, her attempts to repel his advances, and his threats that if she fought him he would make her pregnant but if she didn't, he wouldn't. She then testified "After he got over me, well, somebody knocked on the door and he got up and left. He got up and left. I don't remember if I ever saw his pants. I think they were on the bed. When he got off the bed, I could still see his private parts. After he got off the bed,

he went to the door I imagine. I don't know. Somebody knocked at the door and — After he got up and left the room there, I just laid there. I don't know who came to the house. I did not get out of the bed after he left the bedroom. I was crying at the time."

Guy Petty, grandfather of the prosecuting witness, testified that on the day in question he had been fishing in a lake just below the house of his daughter and son-in-law, that he could see the driveway to the house from the lake, that he saw his son-in-law's car pull in the drive, and in about ten minutes went to the house. He did not knock but opened the door and walked in. His son-in-law was in the bathroom fixing to shave. The bathroom, in respect to where he was standing, was right straight through the entrance of the door, back to the left. The bedroom Glenda used was back down to the right to the end of the hall. There was no way a person could get from the bedroom to the bathroom without being seen from where he was standing. He further testified "From where I was standing I did not see anybody come from the bedroom and go into the bathroom. He was standing there at the glass fixing to shave. He had clothes on at the time, he had pants and a shirt on. Pants and shirt. He was fully dressed when I was talking to him. No buttons on his clothes were unbuttoned that I noticed."

The court in its charge stated that "the State of North Carolina has offered certain evidence which in substance tends to show . . . that he did not have intercourse with her, but that as he was attempting to have intercourse with her and his private parts were touching hers; that there was a knock on the door and he got up and left — placed his trousers on — she stated he put his trousers on." In giving defendant's evidence, the court charged that Mr. Guy Petty testified that "Mr. Petty went to the house about ten minutes after Mr. Boone's car drove in; that he did not knock, that he just walked in, and that as he came in Mr. Boone was coming out of the bathroom; that he could see down the hall to the bedroom; that Boone had on his pants and shirt and was, in fact, pulling his pants up as he came out of the bathroom".

It is obvious that the court inadvertently stated facts which were not in evidence. It is well settled that if the trial judge misstates the facts in recapitulating the evidence or the contentions of the parties, it is the duty of the aggrieved party to call it to his attention so that correction may be made before the case is finally given to the jury. *In re Will of McGowan,* 235 N.C. 404, 70 S.E. 2d 189, and cases there cited. However, the circumstances here, we believe, take this case out of the well-established general rule. The facts stated by the court

were not in evidence and related to a critical area of the case, amounting very nearly to the supplying of a missing link in the State's evidence. "It is prejudicial error to submit to the jury for consideration facts material to the issue of which there is no evidence." *Baxley v. Cavenaugh*, 243 N.C. 677, 92 S.E. 2d 68, and cases cited therein. As in *Baxley*, the errors go directly to the crux of the case, and not to a subordinate feature thereof. We have no way of knowing how much, if any, weight the jury gave to these misstatements in their deliberations and verdict. Although inadvertent, we consider the errors sufficiently prejudicial to warrant a new trial.

We do not discuss the other assignments of error. They are not likely to occur in a retrial.

New trial.

CAMPBELL and BRITT, JJ., concur.